**UNITED STATES of America,
Plaintiff,**

v.

**BETHLEHEM STEEL CORPORATION
and The Youngstown Sheet & Tube
Company, Defendants. . . .**

United States District Court
S. D. New York.

March 15, 1958.

See also 157 F.Supp. 877.

Victor R. Hansen, Asst. Atty. Gen., Allen A. Dobey, Donald M. Melchior, Attorneys, Department of Justice, Washington, D. C., for the United States.

Cravath, Swaine & Moore, New York City, Bruce Bromley, John H. Morse, New York City, of counsel, for defendant Bethlehem Steel Corp.

Simpson, Thacher & Bartlett, New York City, Whitney North Seymour, Richard Jones, New York City, of coun-

sel, Baker, Hostetler & Patterson, Cleveland, Ohio, Howard F. Burns, Raymond T. Jackson, Cleveland, Ohio, of counsel, for defendant Youngstown Sheet & Tube Co.

**WEINFELD, District Judge.**

The Government moves pursuant to Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C., for an order requiring each defendant, Bethlehem Steel Corporation and The Youngstown Sheet & Tube Company, to produce copies of reports filed by them for the year 1954 with the Department of Commerce, Bureau of Census. The reports, referred to as Forms BC 67 J, were submitted to the Bureau of Census to aid that agency in preparing five year censuses of manufactures and other businesses required by 13 U.S.C. § 131.

The defendants do not oppose production of copies of the reports so filed by them but urge that as a condition the Government be required to undertake, when requested by the defendants, to supply them with the BC 67 J reports filed by other major steel producers with the Department of Commerce. They contend that the reports of all the producers are necessary to present a complete and rounded picture of the steel industry which they urge is relevant to a consideration of the basic issues in the action which is one brought by the Government to enjoin the defendants from proceeding with a proposed merger on the ground that it violates Section 7 of the Clayton Act, 15 U.S.C.A. § 18.

The Department of Commerce has declined to grant access to the reports or to make the information contained therein available to the Department of Justice or to any other person. And it is for this reason that the Department of Justice seeks production of the copies filed by the defendants.

The refusal of the Department of Commerce to permit access to the filed data rests on statutory authority, 13 U.S.C. §§ 8, 9. In substance the statute contains provisions intended to protect those who, like the defendants, are required by law to furnish information to the Department of Commerce.

Section 9 insofar as pertinent provides:

"Information as confidential; exception

"(a) Neither the Secretary, nor any other officer or employee of the Department of Commerce or bureau or agency thereof, may, except as provided in section 8 of this title—

"(1) use the information furnished under the provisions of this title for any purpose other than the statistical purposes for which it is supplied; or

"(2) make any publication whereby the data furnished by any particular establishment or individual under this title can be identified; or

"(3) permit anyone other than the sworn officers and employees of the Department or bureau or agency thereof to examine the individual reports.

"(b) The provisions of subsection (a) of this section relating to the *confidential treatment of data for particular individuals and establishments*, shall not apply to the censuses of governments provided for by subchapter III of chapter 5 of this title, nor to interim current data provided for by subchapter IV of chapter 5 of this title as to the subjects covered by censuses of governments, with respect to any information obtained therefor that is compiled from, or customarily provided in, public records." (Emphasis supplied.)

■ Despite the language of the statute the defendants urge that Congress did not intend to exclude details of the data contained in census reports filed by manufacturers from Court process. I cannot agree. The language of the stat-

ute is clear and unambiguous. There is no basis for engrafting further exceptions upon those specified in the statute. One need not probe far to understand that when Congress imposed upon citizens the duty of disclosing information of a confidential and intimate nature, its purpose was to protect those who complied with the command of the statute. Apart from giving assurance to citizens that the integrity of the information would be preserved by the Government, another purpose was to encourage citizens to submit freely all data desired in recognition of its importance in the enactment of laws and other purposes in the national interests.[1] Accordingly, Congress created a privileged status as to the information furnished to the Census Bureau and directed its confidential treatment so as to prevent misuse.

However, the defendants urge that use of information furnished is permitted in certain instances and that the provisions of Section 9 are qualified by exceptions incorporated in Section 8 which provides:

"(b) The Secretary may furnish transcripts or copies of tables or other census records * * * for State or local officials, private concerns, or individuals. * * *

"(c) In no case shall information furnished under the authority of this section be used to the detriment of the persons to whom such information relates".

Under these provisions the defendants make a two fold argument. They contend that the words "other census records" are broad enough to include the BC 67 J reports and further that the issue of whether detriment will be occasioned to the other steel producers is a matter for determination by the Court and not by the Secretary of Commerce.

To support their position the defendants refer to the statements and arguments by a member of the House of Representatives in 1918 with respect to a predecessor bill who successfully secured the deletion of the words "other records" from that bill on the ground that they were broad enough to include manufacturers' reports;[2] that notwithstanding, the Conference Committee reinserted the words "other records" thereby suggesting that by the adoption of the bill as reported by the Committee, Congress intended to bring manufacturers' reports within the embrace of "other records" which in the discretion of the Secretary of Commerce could be disclosed or made available to third parties.

■■ Statements and arguments by a member of either House of the Congress made during the course of a floor debate of a bill do not necessarily reflect Congressional purpose.[3] A full reading of the debates demonstrate that the Representative's remarks affords no basis to overrule the obvious intent of the sponsors of the bill to strengthen rather than to dilute the section relating to the confidential character of the filed reports. Moreover, the consistent position through the years of the Secretaries of Commerce supported by opinions of succeeding Attorneys General,[4] reflects a practical interpretation of the statute[5] in harmony with its purpose to hold fast to the exceptions rather than to expand them. Further, since under Section 8 the Secretary of Commerce is empowered to make disclosure only in the event it is not detrimental to the persons submitting the information, this involves an exercise of discretion, which Congress

1. Cf. United States v. Moriarity, C.C.S.D. N.Y., 106 F. 886, 891–892.

2. 56 Cong.Rec. 8658–9 (1918).

3. United States v. Sears, Roebuck & Co., D.C.S.D.N.Y., 111 F.Supp. 614, 619; Schwegmann Bros. v. Calvert Distillers

Corp., 341 U.S. 384, 395–396, 71 S.Ct. 745, 95 L.Ed. 1035.

4. 36 Opinions of Attorney General, No. 362 (1930); 41 Id., No. 22 (1953).

5. Cf. United States v. Public Utilities Comm., 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020.

clearly intended as an executive function of the Secretary, and not a judicial function.[6]

█ The defendants next urge, if I understand their position, that since the action is brought in the name of the United States Government and not the Department of Justice, the Government waived any privilege with respect to the reports. This argument, however, assumes that the privilege was intended in favor of the Government. It disregards the fact that the privilege created and the confidence to be respected was in favor of the corporation or the person filing the report—in this instance the other steel producers. It also disregards the fact that the Department of Justice does not have possession of the reports, and that it, like the defendants, has been denied access to them by the Department of Commerce which at once distinguishes the instant case from those relied upon by the defendants such as United States v. Andolschek, 2 Cir., 142 F.2d 503; Fleming v. Bernardi, D.C.N.D.Ohio, 4 F.R.D. 270; Bowles v. Ackerman, D.C. S.D.N.Y., 4 F.R.D. 260. In each of the latter the documents were in the possession of the agency interested in the suit but which declined to produce them and involved prosecution or claims based on the very matters contained in the documents or matters sufficiently close to make them relevant. Thus these cases

refuse to permit the Government to use a privilege as both a sword and a shield.[7]

Also, these cases involve a claim of privilege by a Governmental agency asserted under its own regulations promulgated pursuant to a grant of statutory authority to make rules and regulations with respect to its functioning and the keeping of its records.[8] The Congressional grant of authority under which the regulations were issued was general and did not specify or refer to any privilege or confidence with respect to records. It was the agency itself which created the privilege. This is quite unlike the instant statute where Congress has recognized and created an express privilege. In this respect it is important to note that in United States v. Grayson, 2 Cir., 166 F.2d 863, 870, the Court recognized an exception to the rule of the Andolschek case saying: "We need not say that there can never be situations in which a privilege created by departmental regulation will not prevail, *just as it would prevail if Congress had created an unconditional privilege,* or if the evidence was in the possession of a state official, who could not be compelled to produce it".[9] (Emphasis supplied.)

Likewise the decisions which require a party to produce copies of his income tax returns or to cause their production [10] do not support the defendants' position. First, the returns which were

---

6. Assuming arguendo that Congress had so intended, it raises serious constitutional issues. Cf. In re Ullman, D.C.S.D. N.Y., 128 F.Supp. 617, 624, affirmed 2 Cir., 221 F.2d 760, affirmed 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511. See also Marbury v. Madison, 1 Cranch 137, 170, 2 L.Ed. 60; Decatur v. Paulding, 14 Pet. 497, 10 L.Ed. 559.

7. See also Firemans Fund Indemnity Co. v. United States, D.C.N.D.Fla., 103 F. Supp. 915, holding that the Government could avail itself of a privilege based on a departmental regulation only if it was not itself using the privileged information in the pending litigation.

8. See, e. g. 5 U.S.C.A. § 22 "The head of each department is authorized to pre-

scribe regulations, not inconsistent with law, for * * * preservation of the records, papers, and property appertaining to it".

9. See also 4 Moore, Federal Practice ¶¶26.25 [6] and 26.25 [7] for a discussion of the cases pro and con on the issue of discovery of privileged documents from the Government in cases in which it is a party.

10. The authorities are divided on the question of whether income tax returns are subject to discovery. See cases cited in Baim & Blank, Inc., v. Bruno-New York Inc., D.C.S.D.N.Y., 17 F.R.D. 346, 348, note 1.

compelled were those of a party to the litigation and not those of third parties not involved in the suit.[11] Second, and more important, the Internal Revenue Code expressly provides that returns " * * * shall constitute public records; but * * * they shall be open to inspection only upon the order of the President and under rules and regulations prescribed by the Secretary or his delegate and approved by the President".[12] Here is express Congressional authority whereby the records may be made available. In sharp contrast the census statute itself, except as specifically provided in Section 8, enjoins all persons including the Secretary of Commerce and all his personnel from making any disclosure. Congressional purpose that filed information be kept inviolate is underscored by another section which imposes substantial criminal sanctions for any unauthorized disclosure.[13] Had Congress intended to permit other exceptions to the privilege it could readily have provided a method as it did in the instance of tax returns or the records of the Veterans' Administration.[14]

I am of the view that the purpose to protect the privacy of the information furnished to the Government is so clear and the public policy underlying the purpose so compelling that absent a clear Congressional grant, there is no basis upon which to direct the Department of Commerce to make available to the Department of Justice or to any person the reports here sought.

Since the defendants do not oppose the production of copies of their reports (except upon the condition noted) it is unnecessary for the Court to decide whether the defendants as parties to a litigation commenced by reason of their proposed merger, would be entitled to assert the privilege. Apart from this, the fact is, as the defendants concede, the information contained in the reports give details with respect to defendants' sales of steel products according to particular district offices from which each sale was made. In substance this is information already submitted to or otherwise available to the Government from defendants under pre-trial procedures.

Settle order in accordance with the foregoing.

---

11. Except Mullen v. Mullen, D.C.D.Alaska, 14 F.R.D. 142.

12. 26 U.S.C. § 6103.

13. 13 U.S.C. § 214.

14. 38 U.S.C.A. § 3201 provides that the records of the Veterans' Administration "shall be confidential and privileged * * * except * * * when required by process of a United State court to be produced in any suit or proceeding therein pending * * *".